UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

JOHN WESLEY FLEURISCA, Petitioner,

v. Civil Action No. 4:26-cv-541-RGJ

M. BALTZAR, et al., Respondents.

* * * * *

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the Petition for Writ of Habeas Corpus [DE 1] filed by Petitioner John Wesley Fleurisca ("Fleurisca"), *pro se*. The United States ("Respondents") responded [DE 8], and Fleurisca did not reply. These matters are ripe. For the reasons below, Fleurisca's Petition for Writ of Habeas Corpus [DE 1] is **GRANTED**.

**I. BACKGROUND**

Fleurisca is a native and citizen of Haiti. [DE 1 at 1]. He entered the United States on August 11, 2024, at the Hidalgo Port of Entry in Hidalgo, Texas, where he was processed and released on parole. [DE 8-1 at 48]. Respondents assert that Fleurisca's parole expired on April 18, 2025, while Fleurisca asserts that his parole was granted until April 24, 2026. [DE 8 at 29, DE 1-1 at 17]. On August 11, 2024, Fleurisca was also served with a Notice to Appear ("NTA"), charging him as an arriving alien and removeable under 8 U.S.C. § 1182(a)(7)(A)(i)(I). [DE 8-2 at 50–51].[1] On March 13, 2026, Fleurisca was found by Indianapolis Metro Police Department ("IMPD") officers unconscious in the driver's seat of a vehicle that was in drive but stopped partially over a curb. [DE 8-1 at 48–49]. After he was assisted out of the vehicle, he registered a blood alcohol level of .211%. [DE 8-3 at 54]. On March 16, 2026, Fleurisca was turned over to

[1] The NTA ordered Fleurisca to appear before a United States Department of Justice ("DOJ") immigration judge on December 2, 2026. [DE 8-2 at 50].

U.S. Immigration and Customs Enforcement ("ICE") pursuant to a detainer, served with a Warrant for Arrest of Alien, and taken into ICE custody. [DE 8-1 at 48; DE 8-4 at 55]. On March 31, 2026, drunk driving charges were filed against him in in Marion Superior Court, and on April 10, 2026, that court issued a warrant for his arrest. [DE 8-5 at 56; DE 8-6 at 60].

On April 17, 2026, an immigration judge ("IJ") denied Fleurisca's request for a change in custody status, explaining that he was "detained under section 235(b) of the [Immigration and Nationality Act] [("INA")], 8 U.S.C. § 1225(b)," and returned to custody pending removal proceedings. [DE 8-7 at 61]. Relying on *Matter of Q. Li*, 29 I. & N. Dec. 66 (BIA 2025), the IJ reasoned that

> [a]n alien detained under section 235(b) of the INA, 8 U.S.C. § 1225(b), who is released from detention pursuant to a grant of parole under section 212(d)(5)(A) of the INA, 8 U.S.C. § 1182(d)(5)(A) (2018), and whose grant of parole is subsequently terminated, is returned to custody under section 235(b) pending the completion of removal proceedings.

[DE 8-7 at 61].

Fleurisca is currently detained by ICE at the Daviess County Detention Center, located in Owensboro, Kentucky, and filed this Petition on August 10, 2026, requesting "[r]elease, or alternatively[,] a bond hearing." [DE 1 at 1, 15]. The criminal case against him in Indiana is still pending. [DE 8-6 at 58–60].

## II. DISCUSSION

Fleurisca asserts that his continued detention is unlawful and violates his due process rights. [DE 1]. He challenges his classification as an "arriving alien" subject to mandatory detention under §1225(b)(2) and contends that his prolonged detention without an individualized bond hearing violates the Fifth Amendment. [*Id.*]. He asserts that he is properly detained, if at all, under Section 236 of the INA, codified at 8 U.S.C. § 1226(a). [*Id.*]. Section 1226(a) provides that

noncitizens in removal proceedings may be detained but are eligible for release on bond. *See* 8 U.S.C. § 1226(a).

Respondents assert that the Court should deny Fleurisca's Petition because he is properly detained under § 1225(b)(2) and has not been deprived of any due process. [DE 8].

**A. 1225(b)(2)**

There is no dispute that Fleurisca was lawfully paroled into the United States or that Fleurisca's parole has since expired. The question is which detention statute(s) properly apply to Fleurisca, who has resided within the United States since 2024. If § 1226(a) applies, then he was entitled to an individualized custody redetermination hearing, at which time the IJ was required to evaluate whether there is a risk of flight or danger to the community. *See* 8 C.F.R. § 1236.1(c)(8), (d)(1)). Here, Fleurisca did not receive this hearing because the IJ found that he was ineligible for release on bond pursuant to § 1225(b)(2). [DE 8-7 at 61].

Fleurisca asserts that federal courts have found mandatory detention for individuals already present in the United States. [DE 1]. The Sixth Circuit addressed this issue in *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026). In that case, the court of appeals held that mandatory detention of certain noncitizens "already present in the United States" who were not "seeking admission" was unlawful, and that the petitioners were properly detained, if at all, pursuant to § 1226(a). *Lopez-Campos*, 175 F.4th at 732 (explaining "§ 1226 applies to aliens already present in the United States" and "creates a default rule for those aliens").

Nevertheless, Respondents contend that *Lopez-Campos* is inapplicable because that case and others like it concerning the "typical 1225/1226 controversy" dealt with individuals that "entered without inspection," unlike Fleurisca. [DE 8 at 29]. Respondents ask the Court to follow the court's reasoning in *Gonzalez Crispin v. Olson*, No. 4:26-CV-308-CHB, 2026 WL 1430506

(W.D. Ky. May 21, 2026), which similarly distinguished *Lopez-Campos*. *See id.* at 5 n.6 ("*Lopez-Campos* does not resolve the issues in this case, as it did not address the effect of a Petitioner's parole."). Consistent with *Gonzalez Crispin*, Respondents argue that Fleurisca is an "arriving alien" who received parole and therefore remains at all times an "alien seeking admission" within meaning of 8 U.S.C. § 1225(b)(2)(A). [DE 8 at 36 ("[A]lthough Petitioner is physically detained in this jurisdiction, under the law, he is still considered to be standing at our port of entry trying to gain admission . . . [the INA] makes him an arriving alien that is still seeking admission.")].

Respondent's argument rests on a legal concept known as the "entry fiction" doctrine. As the Sixth Circuit has explained, "[t]his paradox of paroling aliens into the United States yet refusing to recognize their 'entry' into the United States has been termed the 'entry fiction' by some courts." *Rosales–Garcia v. Holland*, 322 F.3d 386, 391 n.2 (6th Cir. 2003). The doctrine stems from the notion that "an alien on the threshold of initial entry stands on a different footing: 'Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.'" *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953). In *Mezei*, the Supreme Court created an "entry fiction," which extended this distinction to some individuals in the interior of the United States but who, as a result of their status, are deemed technically on the threshold of entry.

The entry fiction doctrine is further reflected in the relevant federal regulation. Regulation defines an "arriving alien" as:

> [A]n applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport. *An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act* [codified at 8 U.S.C. § 1182(d)(5)(A)], *and even after any such parole is terminated or revoked.*

8 C.F.R. 1001(q) (emphasis added). Indeed, as Respondents note, the Sixth Circuit has stated in dicta that "an arriving alien remains an arriving alien even if paroled . . . and even after any such parole is terminated or revoked." *Rais v. Holder*, 768 F.3d 453, 456 n.4 (6th Cir. 2014) (citing 8 C.F.R. § 1001.1(q)). Moreover, "[w]hen a Section 1182 humanitarian parole terminates, 'the alien shall forthwith return or be returned to the custody from which he was paroled[,] and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.'" *Daza v. Albarran*, No. 25-cv-10214-RFL, 2026 WL 81518, at *3 (N.D. Cal. Jan. 12, 2026) (quoting 8 U.S.C. § 1182(d)(5)(A)). *Cf. Martinez v. U.S. Atty. Gen.*, 577 F. App'x 969, 973 (11th Cir. 2014) (citing 8 C.F.R. § 212.5(e)) ("When parole is terminated, the paroled alien is restored to the status that he or she had at the time of parole and becomes subject to removal proceedings.").

Respondents thus conclude on termination of Fluerisca's parole, all the circumstances which require applying § 1225(b)(2) were necessarily met: Fluerisca was restored to (1) an "applicant for admission"; (2) "seeking admission"; and (3) "not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2).

Yet courts in the Sixth Circuit are divided on whether, upon expiration of their parole, noncitizens like Fluerisca who are present in the interior of the country are subject to mandatory detention under § 1225(b)(2). *Compare Chirinos Chirinos v. Tindell*, No. 3:25-CV-789-CHB, 2026 WL 926941, at *11 (W.D. Ky. Apr. 6, 2026) (finding section 1225(b)(2) applies because "upon the termination or expiration of an alien's parole, that alien is returned to the status they held at the time of their parole, that is, the status under which they were subject to the 'immediate charge and control' of DHS"), *Gonzalez Crispin*, 2026 WL 1430506, at *4 (accord), *Jean v. Bullock*, No. 2:26-CV-02571-BCL-ATC, 2026 WL 1531056, at *3 (W.D. Tenn. May 30, 2026)

(Petitioner thus falls without *Lopez-Campos*'s definition of Section 1226(a) and within Section 1225(a)(1)'s definition of 'applicants for admission' subject to mandatory detention under Section 1225(b)(2)(A)"), *with Ontiveros v. Warden Corr. Ctr. of Nw. Ohio*, No. 3:26-CV-632, 2026 WL 1109422, at *5 (N.D. Ohio Apr. 24, 2026) ("Respectfully, this Court must disagree with *Chirinos*. *Chirinos* incorrectly conflates a return to 'custody' with a return to prior 'status.'"), *Quintero v. Olson*, No. 4:26-CV-34-DJH, 2026 WL 596643, at *3 (W.D. Ky. Mar. 3, 2026) (finding petitioner was "detained under § 1226(a), not § 1225(b)(2), and is thus entitled to a bond hearing"), *Ismoilov v. Maydak*, No. CV 26-185-DLB, 2026 WL 1587994, at *3 (E.D. Ky. June 3, 2026) (finding Sixth Circuit's reasoning in *Lopez-Campos* applied to petitioner who had been present in the interior for more than three years and whose parole had expired).

The same split has been recognized by district courts in our sister circuits across the country. *See, e.g.*, *Sananes Hernandez v. Leyva*, No. 4:26-CV-00054-DN, 2026 WL 1948965, at *5 (D. Utah July 6, 2026) ("Recent litigation has highlighted a dispute regarding DHS's authority to re-detain parolees under 8 U.S.C. § 1225(b)(2) following the termination or expiration of their parole."); *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 309 (E.D.N.Y. 2025) ("Although Rodriguez-Acurio is an applicant for admission, she clearly is not presenting herself at the border and was not recently apprehended just after entering, and thereby is not 'seeking admission' under Section 1225(b)(2)."), *appeal dismissed*, No. 26-219, 2026 WL 1208948 (2d Cir. Feb. 25, 2026); *Qasemi v. Francis*, No. 25-CV-10029 (LJL), 2025 WL 3654098, at *11 (S.D.N.Y. Dec. 17, 2025) (collecting cases holding that "any determination as to [former parolee noncitizen's] detention must be conducted under the discretionary framework of Section 1226(a), which 'governs the process of arresting and detaining noncitizens who have already entered the United States pending their removal'"); *Estebesov v. Olson*, No. 26-CV-1165, 2026 WL 1229622, at *3, n.2 (N.D. Ill.

May 5, 2026) (holding "[t]he plain language of the relevant statute provides that upon termination of his parole, Petitioner was subject to mandatory detention under § 1225(b)" and noting that "the Fifth and Eighth Circuits adopted this minority view").

The Court is unpersuaded by Respondent's arguments distinguishing *Lopez-Campos.* Indeed, the plain language of the parole statute suggests that Fluerisca is on equal footing with the petitioners in *Lopez-Campos.* The parole statute provides that, upon termination of parole, a petitioner's "case shall continue to be dealt with *in the same manner as that of any other applicant for admission* to the United States." 8 U.S.C. § 1182(d)(5)(A) (emphasis added). And the process for detaining other applicants for admission within the United States is clear: "Section 1226 generally governs the process of arresting and detaining aliens once inside the United States." *Chavez v. Dir. of Detroit Field Off.*, No. 4:25-cv-02061-SL, 2025 WL 2959617, at *4 (N.D. Ohio Oct. 20, 2025) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018)). *See Lopez-Campos*, 175 F.4th at 722 ("Put differently, § 1225(b)(2)'s mandatory detention scheme applies to certain noncitizens who seek admission into the country, whereas § 1226's permissive detention scheme applies to all other noncitizens pending a decision on their removability, with exceptions.").

True, Fluerisca's status as a former parolee arguably means that he indefinitely continues to be "an arriving alien." *See* 8 C.F.R. 1001(q). But just as an "'applicant for admission' is not necessarily 'seeking admission,'" *Lopez-Campos*, 175 F.4th at 732, neither is an "arriving alien." In any event, as the district court in *Jean* explained, *Lopez-Campos* stands for the proposition that "the entry fiction 'does not control' when an alien has 'resided within the United States for years.'" 2026 WL 1531056, at *3. *See also Ontiveros*, 2026 WL 1109422, at *4 (finding regulatory definition of "arriving alien" unpersuasive); *Coal. For Human Immigrant Rights v. Noem*, 805 F. Supp. 3d 48, 85 (D.D.C. Aug. 1, 2025) ("[S]ection 1182(d)(5)(A) does not, as Defendants insist,

say that parolees return, upon the termination or expiration of their parole, to 'the position of an applicant for admission standing at the threshold of entry."), *vacated on other grounds,* 185 F.4th 1275 (D.C. Cir. 2026); *Walizada v. Trump*, No. 2:25-cv-768, 2025 WL 3551972, at * 15 (D. Vt. Dec. 11, 2025) (finding it "absurd" "unjust" and "counterintuitive" that the idea that the expiration of a petitioner's parole would place him in the "perpetual status as an 'arriving alien'").

Here, Respondents assert that Fluerisca's parole expired on April 18, 2025. [DE 8 at 29]. Accepting this assertion, Fleurisca remained in the United States for nearly a year after his parole expired before he was taken into ICE custody in March 2026. [*Id.* at 29–30]. Fluerisca's continued physical presence in the country after the expiration of his parole demonstrates that he, like petitioners in *Lopez-Campos*, is not "seeking admission." 18 U.S.C. § 1225(b)(2). *See* 175 F.4th at 723 ("[F]or a noncitizen to be 'seeking admission' under § 1225(b)(2)(A), the noncitizen must actively be in search of lawful entry into the United States via inspection and authorization by an immigration officer."); *Ismoilov*, 2026 WL 1587994, at *3 ("By remaining in the country undetected after his parole expired, Ismoilov obtained similar status to any other undocumented immigrant who entered the United States without inspection and without DHS having knowledge of their whereabouts.").

Accordingly, the Court will follow those courts which have held that § 1226(a), and not § 1225, applies to noncitizens such as Fleurisca, who remain in the country after their parole expires. *See supra* (collecting cases).

Having determined that Fleurisca's detention is governed by § 1226(a), Respondents' arguments as to the due process required by § 1225(b)(2) are futile. [*See* DE 8 at 42 ("[Fleurisca] is not owed any more process than Congress has authorized; therefore, [he] has not suffered a deprivation of any procedural due process rights.")]. Like the petitioners in *Lopez-Campos*,

Fleurisca has "a liberty interest to be free from detention." *Lopez-Campos*, 175 F.4th at 734. Deprivation of that interest "without bond under § 1226(a) [is] a deprivation of liberty that violates [his] due process rights" and makes his continued detention unlawful. *Id.*

**B. Remedy**

The proper remedy for unlawful executive detention is generally release. *See Orellana v. Noem*, 807 F. Supp. 3d 745, 754 (W.D. Ky. 2025) ("[C]ourts across the country have ordered the release of individuals stemming from ICE's illegal detention."); *Minarcaja Concha v. Lyons*, 818 F. Supp. 3d 367, 390 (E.D.N.Y. 2026) ("Release from detention is the typical remedy for unlawful executive detention.") (cleaned up); *Roble v. Bondi*, 803 F. Supp. 3d 766, 774 (D. Minn. 2025) (ordering petitioner's "release from custody as a remedy for ICE's illegal re-detention"). *See also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure release from unlawful detention.").

Release is not the only remedy, however. Historically, "common-law habeas corpus was, above all, an adaptable remedy," whose "precise application and scope changed depending upon the circumstances." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008). The writ's "most extensive" role at common law was "in cases of pretrial and noncriminal detention, where there had been little or no previous judicial review of the cause for detention." *Id.* at 780. In *Boumediene*, the Supreme Court made clear that, "when the judicial power to issue habeas corpus properly is invoked the judicial officer must have adequate authority . . . to formulate and issue appropriate orders for relief, including, if necessary, an order directing the prisoner's release." *Id.* at 787.

The Court concludes that release is necessary because Fleurisca is currently being held in mandatory detention and has been for over six months. As such, his continued dentition, however transitory, is unlawful. Accordingly, the Court will order Fleurisca's release. This is in line with

the remedies fashioned by other district courts in this circuit. *See, e.g.*, *Salinas v. Woosley*, No. 4:25-CV-121-DJH, 2025 WL 3243837, at *5 (W.D. Ky. Nov. 20, 2025) (ordering release and requiring a bond hearing before further re-detention); *Monge-Nunez v. Ladwig*, No. 2:25-CV-03043-TLP-ATC, 2025 WL 3565348, at *7 (W.D. Tenn. Dec. 12, 2025) (ordering release pending a bond hearing). Moreover, "[i]n recent months, courts across the country have ordered the release of detainees in similar situations" where the government has articulated no legitimate interest in detaining individuals who are neither flight risks nor dangers to the community. *Moctezuma v. Henkey*, No. 1:25-CV-00741-BLW, 2026 WL 18809, at *5 (D. Idaho Jan. 2, 2026) (ordering immediate release and collecting cases across jurisdictions); *Cruz-Reyes v. Bondi*, 5:26-CV-60, 2026 WL 332315, at *13 (S.D. Tex. Feb. 3, 2026) ("[D]ue process concerns weigh heavily in favor of granting immediate release."); *Santiago v. Noem*, No. EP-25-CV-361, 2025 WL 2792588, at *13–14 (W.D. Tex. Oct. 2, 2025) (collecting cases and finding that "immediate release appropriately remedies Respondents' violation of [Petitioner's] due process rights through her continued detention.").

However, the Court will not require Respondents to hold a bond hearing following Fleurisca's release. *But cf. Monge-Nunez*, 2025 WL 3565348, at *7. Nevertheless, should Respondents decide to re-detain Fleurisca, absent a material change in circumstances, they must provide him with a bond hearing pursuant to Section 1226(a).

## III. CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Petition for Writ of Habeas Corpus [DE 1] and **ORDERS** the following:

(1) Respondents are directed to release Fleurisca immediately because of the unlawful detention in violation of his due process rights; and

(2) the United States must certify compliance with the Court's order by a filing on the docket by **November 5, 2026.**

Rebecca Grady Jennings, District Judge
United States District Court

Date: November 2, 2026

Cc: Counsel of record